UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LASZLO and ADEL KARALYOS,
citizens of Canada, individually and as
parents of ANN-CLAIRE KARALYOS, a
minor,

    Plaintiffs,

v.

BOARD OF EDUCATION OF LAKE
FOREST COMMUNITY HIGH SCHOOL
DISTRICT 115, et al.,

    Defendants.

No. 10 C 2280
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

### I. OVERVIEW

Plaintiff, thirteen-year-old Ann-Claire Karalyos, a citizen of Canada, filed a nine-count complaint after suffering spinal injuries when she was instructed to dive into a pool while attending a swimming and diving program at Lake Forest High School.[1] Lake Forest High School now moves to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) alleging that as a municipal corporation it, as well as its employees, are immune from liability under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101, *et seq*. For the following reasons, Defendant's motion to dismiss is denied.

---

[1] Count I and II of Plaintiff's First Amended Complaint allege negligence and willful and wanton conduct on the part of The Board of Education of Lake Forest Community High School District 115. Counts III and IV allege negligence and willful and wanton conduct against Carolyn Grevers individually and as an agent of Lake Forest High School. Counts V and VI allege negligence and willful and wanton conduct against John Higgins individually and as an agent of Lake Forest High School. Counts VII and VIII allege negligence and willful and wanton conduct against Colin Kiely individually and as an agent of Lake Forest High School. Lastly, Count IX seeks medical expenses from Defendants pursuant to the Illinois Family Expense Act.

## II. STANDARD OF REVIEW

To state a claim under federal notice pleading standards, all the complaint must do is set forth a "short and plain statement of the claim showing that the pleader is entitled to relief…." FED. R. CIV. P. 8(a)(2). Factual allegations are accepted as true and need only give "fair notice of what the…claim is and the grounds upon which it rests." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007). However, the plaintiff's "allegations, [must] show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1945-50 (2009). Legal conclusions, unsupported by alleged underlying facts, are not entitled to the "assumption of truth." *Id*. at 1951. The application of the standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009), *quoting Iqbal*, 129 S.Ct. at 1950.

## III. DISCUSSION

Defendants contend that the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101, *et seq* ("Tort Immunity Act" or "Act"), shields them from liability and requires a dismissal of Plaintiff's Amended Complaint.

The Illinois legislature enacted the Tort Immunity Act to protect local public entities from liability arising from the operation of government. 745 ILCS 10/101, *et seq*; *Arteman v. Clinton Cmty. Unit Sch. Dist. No. 15*, 763 N.E.2d 756, 760 (Ill. 2002). The Act did not create new duties but instead, codified those duties already existing at common law and provided immunities for certain

governmental activities. *In re Chicago Flood Litig.*, 680 N.E.2d 265, 271 (Ill. 1997) ("[G]overnmental units are liable in tort on the same basis as private tortfeasors unless a tort immunity statute imposes conditions upon that liability.").

A court must therefore determine if a duty is owed and only then whether the activity is protected by the Act. *Arteman*, 763 N.E.2d at 760. Because the Act was enacted in derogation of common law, it should be strictly construed. *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 279 (Ill. 2003). As a federal judge sitting in diversity I apply the substantive law of Illinois, as I believe the highest court in the state would apply it. *Ass'n Benefit Servs., Inc., v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007).

The Illinois Supreme Court has determined that governmental entities operating swimming pools or public bathing areas owe a common law duty of reasonable care to its users. *Barnett v. Zion Park Dist.*, 665 N.E.2d 808, 812 (Ill. 1996). Having established that a duty is owed, I must now determine whether the Act shields Defendants from liability. Defendants assert that Sections 2-201, 3-106, and 3-108 of the Act shield them from liability.

### A. Discretionary Policy Decisions

Defendants contend that Sections 2-201 and 2-109 of the Tort Immunity Act, which provide immunity for discretionary policy decisions, prevent the imposition of liability. Section 2-201 states:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201 (West 2010).

In addition, Section 2-109 states "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2010). These two sections have been termed the "discretionary immunity doctrine." *Chicago Flood Litig.*, 680 N.E.2d at 272.

To be immune from suit pursuant to Section 2-201 an act must be both an act of discretion as well as a policy decision. *See Harinek v. 161 N. Clark St. LTD. P'ship*, 692 N.E.2d 1177, 1181 (Ill. 1998) ("[I]mmunity will not attach unless the plaintiff's injury results from an act performed or omitted by the employee in determining policy *and* in exercising discretion." (emphasis in original)). A policy decision is one that "require[s] the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests." *Id*. at 1181 (citations omitted). In contrast, governmental activities are outside the immunity provided by the Act when they are ministerial in nature. *See Chicago Flood Litig.*, 680 N.E.2d at 272 ("Official duty is ministerial, when it is absolute, certain and imperative, involving merely the execution of a set task, and when the law which imposes it, prescribes and defines the time, mode and occasion for its performance with such certainty, that nothing remains for judgment or discretion." (citations omitted)).

In determining whether an act is a discretionary policy decision or simply a ministerial one, courts have examined the extent to which the government employee had to balance competing interests. *See e.g., Arteman*, 763 N.E.2d at 764 (finding that the "decision not to provide roller-blade safety equipment was a discretionary policy determination" because it involved balancing the costs of the equipment against student safety); *Harinek*, 692 N.E.2d at 1181-82 (holding that a fire marshal's decisions during a fire drill involved "balanc[ing] various interests which compete for the time and resources of the department, including the interests of efficiency and safety"); *Snyder v.*

4

*Curran Twp.*, 657 N.E.2d 988, 993 (Ill. 1995) (determining that the placement of road signs was a ministerial activity because the task was "preformed under a given set of facts in a prescribed manner"); *Torres v. City of Chicago*, 123 F.Supp.2d 1130, 1134 (N.D.Ill. 2000) (determining that the decision of police officers not to contact an ambulance was a ministerial decision).

Here, there is no evidence that the decision to instruct Plaintiff to dive into a pool required the balancing of competing interests. Accepting the allegations contained in the complaint as true, it is improbable that Defendants were required to engage in policy calculations. It cannot be assumed that the decision of where and when to dive required balancing of policy considerations. In *Arteman* and *Harinek*, the Illinois Supreme Court emphasized the extent to which the decisions involved the allocation of limited resources, such as time or money. I do not find that directing swimmers to dive into a pool required a policy making decision. In fact, if as the complaint alleges, the Lake Forest High School swimming rules forbade such dives, then the decision was in violation of a stated policy, not a policy decision.

Accordingly, Defendants' acts were not discretionary policy decisions and therefore not protected by Section 2-201 of the Tort Immunity Act.

**B. Condition of Public Property**

The defendants contend that Section 3-106 provides them with immunity from Plaintiff's claims. Section 3-106 states:

> Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury.

5

745 ILCS 10/3-106 (West 2010).

Section 3-106 includes injuries that result from "the existence of a condition of any public property intended…. for recreational purposes" *Id*. Accordingly, "[i]f liability is not based on the existence of a condition of public property, section 3-106 does not apply." *McCuen v. Peoria Park Dist.*, 643 N.E.2d 778, 780 (Ill. 1994). In *McCuen*, the Illinois Supreme Court examined the "condition" requirement of Section 3-106 as applied to a negligently operated hayrack. *Id*. The court found that when the plaintiffs did not claim that the hayrack itself was dangerous, but rather that it was negligently operated, 3-106 did not apply. *Id*. It held that where "otherwise safe property is misused so that it is no longer safe, but the property itself remains unchanged, any danger presented by the property is due to the misuse of the property and not to the condition of the property." *Id*.

Though *McCuen* may be factually dissimilar to this case, it is noteworthy because it explicitly overrules *Burdinie v. Vill. of Glendale Heights*, 565 N.E.2d 654 (Ill. 1990). In *Burdinie*, the court held that Section 3-106 served to immunize a governmental entity where the plaintiff was injured after being instructed to jump feet first into a pool because the plaintiff failed to plead facts that indicated that the defendant did not maintain the pool in a reasonably safe condition. *Id*. at 660. In overruling *Burdinie*, the *McCuen* court noted that "[t]he swimming instructor's negligence was unrelated to the condition of the swimming pool. We find here that Section 3-106 provides immunity only where liability is based on the condition of public property." *McCuen*, 643 N.E.2d at 781.

With this distinction in mind, it is clear that the cases cited by Defendants do not involve circumstances similar to those alleged in Plaintiff's Amended Complaint. *See e.g., Bubb v. Springfield Sch. Dist.*, 657 N.E.2d 887, 894 (Ill. 1995) (holding that injuries caused by a height difference between the sidewalk and playground were within Section 3-106); *Kayser v. Vill. of*

*Warren*, 707 N.E.2d 285, 289 (Ill. App. Ct. 1999) (finding injuries suffered after tripping at a community center within Section 3-106); *Dinelli v. Cnty. of Lake*, 691 N.E.2d 394, 398 (Ill. App. Ct. 1998) (holding that injuries suffered while crossing a crosswalk were within the immunity provided by Section 3-106).

The Amended Complaint alleges that the supervision and instruction provided to Plaintiff was deficient, not that the pool itself was of an unsuitable condition. Accordingly, Section 3-106 is inapplicable to the present complaint and does not shield Defendants from liability.

**C. Willful and Wanton Conduct**

The defendants next contend that they are immune from suit because Section 3-108 requires "willful or wanton conduct" where the injury is proximately caused by improper supervision.

> (a) Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.
>
> (b) Except as otherwise provided in this Act, neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury.

745 ILCS 10/3-108 (West 2010).

For purposes of the Tort Immunity Act the term "willful and wanton conduct" is defined as follows:

> "Willful and wanton conduct" as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. This definition

7

shall apply in any case where a "willful or wanton" exception is incorporated into any immunity under this Act.

745 ILCS 10/1-210 (West 2010).

In defining the term, Illinois courts have stated that "[i]nadvertence, incompetence, or unskillfulness does not constitute willful and wanton conduct." *Floyd v. Rockford Park Dist.*, 823 N.E.2d 1004, 1010 (Ill. App. Ct. 2005). However, the term does include "a range of mental states from actual or deliberate intent to cause harm, to utter indifference for the safety or property of others, to conscious disregard for the safety of others or their property." *Murray v. Chicago Youth Ctr.*, 864 N.E.2d 176, 189 (Ill. 2007). Although the Act incorporates a definition for "willful and wanton conduct" the Illinois Supreme Court has determined that it was added by the legislature with the intent of integrating the common law definition of "willful and wanton" into the Act.[2] *Id*. at 193.

In *Murray*, the Illinois Supreme Court held that where a student was seriously injured while using a trampoline, without a certified instructor present, and where the program did not obey national gymnastic safety standards there existed a genuine issue of material fact as to whether the defendants were guilty of willful and wanton conduct. *Id*. at 195. The court also emphasized the well-known risks of trampoline use and that the absence of supervision was sufficient to raise a question of fact for a jury. *Id*. at 194.

---

[2] Defendants in their Reply properly note that *Murray* addresses Section 1-210 prior to its 1998 amendment. *See Id*. at 193 ("[W]e express no opinion on the effect, if any, of the 1998 amendment on willful and wanton liability governed by the Tort Immunity Act."). However, the 1998 amendments to Section 1-210 left the definition of "willful and wanton conduct" unchanged. It is unclear why I should apply a wholly different definition of "willful and wanton" from that identified by the *Murray* court as being appropriate for the Act. The essential reasoning of *Murray*, namely, that the language of 1-210 merely incorporated the common law definitions of "willful and wanton" remains persuasive.

Illinois appellate courts, too, have found that being instructed to engage in a dangerous act is sufficient to allege an "utter indifference or conscious disregard" for one's safety. *Peters v. Herrin Cmty. Sch. Dist.*, 928 N.E.2d 1258, 1264 (Ill. App. Ct. 2010) (student instructed to run over obstacle sufficient to support a cause of action for willful and wanton conduct); *Manuel v. Red Hill Cmty. Unit Sch. Dist. No. 10 Bd. of Educ.*, 754 N.E.2d 448, 459 (Ill. App. Ct. 2001) (handicapped student instructed to walk over snow-covered stairs alleged willful and wanton conduct).

Consequently, accepting the allegations contained in the amended complaint as true I find that Plaintiff has successfully plead facts showing that Defendants' conduct was willful and wanton.

**D. Distinct Causes of Action**

Lastly, Defendants propose that Plaintiff's claims in Counts III-IX, against Carolyn Grevers, John Higgins, and Colin Kiely, are impermissibly duplicative of Counts I, II, and IX against Lake Forest High School. Defendants assert that because Illinois law requires school districts to defend and indemnify their employees, Counts other than those against Lake Forest High School should be dismissed.

However, Defendants state no authority other than the Illinois statute to demonstrate that Counts III-VIII are impermissible. In the absence of individual employee liability there is no duty to indemnify. Plaintiff tailors Counts III-VIII to each individual Defendant and alleges that Defendants were acting "individually, and as agent[s] and employee[s] of….Lake Forest Public Schools." Furthermore, in its pleadings "[a] party may state as many separate claims or defenses as it has, regardless of consistency." FED. R. CIV. PRO. 8(d)(3). Accordingly, I decline to dismiss Counts III-VIII for failing to "state a claim upon which relief can be granted." FED. R. CIV. PRO. 12(b)(6)

## IV. CONCLUSION

For the foregoing reasons, I deny Defendants' motion to dismiss.

ENTER:

_____
James B. Zagel

United States District Judge

DATE: March 9, 2011